UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re various controversies between

GARY MERCURY and MARY MERCURY,

                          Debtors,                             04 Civ. 8515 (CLB)

and

SOUTH LIBERTY REALTY CORP.,                ***Memorandum and Order***

                          Claimant.
-----------------------------------------------------------x
Brieant, J.

      Pursuant to a mandate issued by the Court of Appeals on January 3, 2006, and filed in this Court on January 9, 2006, a hearing was held in this case on September 25, 2006, after numerous adjournments. By summary order and mandate, the Court of Appeals affirmed in part, vacated in part, and remanded in part this Court's earlier decision, which resulted in a $18,209.70 judgment in favor of South Liberty. The parties' post-hearing submissions were submitted for the Court's consideration on November 6, 2006. This litigation arises out of many undocumented oral agreements among shareholders of South Liberty Realty Corporation, a close corporation involved in condominium development and sales. This Court previously adjudicated several unresolved issues arising from the Mercury's bankruptcy proceedings, which decision the Mercury's appealed. Familiarity of the reader with the facts and prior proceedings in this case is presumed.

      The original basis on which Gary Mercury alleged unequal shareholder treatment and sought an equitable offset against the corporation's claims against him, payment of which was

1

guaranteed by Mary Mercury, was his assertion that only he was charged interest for shareholder loans granted to the shareholders in their capacity as purchasers, by South Liberty.[1]  He now adds unequal treatment claims based on a $38,000 discount apparently applied to a condominium unit sold to Shareholder Al Vitiello's son, Steven; based on $25,000 fees allegedly paid (or used to offset debt) to South Liberty principal Al Vitiello for construction management services, which Mr. Mercury claims were never performed; and based on an alleged $10,000 overpayment by South Liberty to MCM, a paving and grading contractor.  South Liberty obviously disputes his contentions of unequal treatment.

>In its decision, the Court of Appeals stated:
>
>We affirm the remainder of the district court's decision for the reasons stated by Judge Brieant.  The district court's determinations as to South Liberty's value, Gary Mercury's 22 percent interest, and the net value of South Liberty's claim against Gary Mercury are therefore affirmed subject to adjustment if Gary Mercury ultimately prevails in seeking an offset of the interest based on alleged unequal shareholder treatment.

*Summary Order* at 4.  The Court remanded the cause "to the district court to consider anew the Mercurys' 'choate and inchoate' claims to equal treatment." *Id.*  The Court discerns the following from the testimony at the hearing on remand and the grossly inadequate and incomplete financial records kept by South Liberty and its principals, as presented in this case.  The Court here notes that any prior findings or statements by the Bankruptcy Court as to the issue of interest were vacated by virtue of this Court's grant of the Bankruptcy Court's recommendation for a "Limited Withdrawal of the Reference," which would extend to "all of the

---

[1] South Liberty argues that no equitable remedy should be allowed as the Mercury's have for so long failed to pay their debt to South Liberty and come to the table with unclean hands.

controversies and contested matters outstanding between South Liberty on the one hand and Gary Mercury and Mary Mercury on the other" and which included, *inter alia*, "the putative value of various claims which Gary Mercury asserts that South Liberty holds against other stockholders of South Liberty, including a claim that South Liberty has the right to recover interest from other shareholders." *See Recommendation Doc. No. 2*. The Bankruptcy Court's prior findings and Order dated March 5, 2004, had been vacated by this Court's Order dated August 13, 2004, filed under District Court Docket No. 04 Civ. 3306. Accordingly, the issue of interest is considered on remand *de novo* and not for clear error.

*Unequal Shareholder Treatment*

Mr. Mercury was among several shareholders to whom South Liberty loaned money in connection with condominium purchases. *Tr. at 28*. A loan was granted to Mr. Al Vitiello in the amount of $150,000 on August 28, 1989; to Mr. Gary Mercury in the amount of $150,000 on August 28, 1989; to Ms. Leona Monahan in the amount of $35,000 on August 28, 1989; and to Mr. Jim Trimble in the amount of $35,000 on October 25, 1989. *See Mercury Exh. H*. At some point, the shareholders voted as a corporation that the loan amounts would be due, if not already paid, when a shareholder sold their unit. *Tr. at 48; see also South Liberty Exh. A*. Mr. Mercury sold his unit in 1995, but to this day never paid the corporation the loan balance, having previously challenged in state court proceedings against him the due date for repayment. *See Id.* Of the primary shareholders, only Mr. Mercury's loan balance remained outstanding, which prompted South Liberty to sue him in state court for the unpaid loan balance. That suit resulted in a judgment in the corporation's favor in 1999. *See South Liberty, Exh. A*. Thereafter, Mr.

Mercury filed for bankruptcy.

At the hearing on remand, the Mercury's presented Mr. James Murray, a certified public accountant and long-time personal friend of the Mercurys, who testified that in January 2001, he was asked by Mr. Mercury to review, and did review South Liberty's records, including its bank statements, cancelled checks, invoices, tax returns and general ledgers. *Tr. at 8-9.* On redirect examination, Mr. Murray testified:

> COURT: As I understand it, they put it on the books and he never paid it; is that right?
>
> A: No, sir, interest is not on the books.
>
> COURT: If the interest is not on the books, what is your basis for claiming that he owes it?
>
> A: It's my understanding that the – that at some point in time the decision was made that interest would be paid on these loans. Outside accountants had prepared an analysis showing the interest that was due as of the end of 1994, which you have - -
>
> COURT: But they never put it on the books; is that what you're telling us?
>
> A: The interest is not reflected on the books.
>
> COURT: As to anybody.
>
> A: As to anybody.
>
> ...
>
> Q: And then at some point they stopped accruing that interest?
>
> COURT: They never accrued it, all they did was put it on the financial statements. That's what he's telling you.
>
> W: It is not reflected either in the general ledger or the tax returns as to ever being accrued or ever paid.

  COURT:  As to anybody.

  A:  As to anybody.

*Tr. at 43-45*. On re-cross examination, Mr. Murray testified that he is the accountant who set up the original set of books at South Liberty, and that he stopped working on the books around 1989. *Id. at 45-46*.

  Included in the record is a document designated as "Notes to the Financial Statement as at December 31, 1994," which was prepared by outside accountants and shows the accounts receivable and payable, including rates and accruals of interest on each of the shareholder loans through December 31, 1994. *See Exh. H*. The interest rate on loans to and from South Liberty was listed as 10% through December 31, 1991, was 7% from January 1, 1992 through December 31, 1994, and thereafter was 10%. The Mercury's witness, Mr. Murray, testified that his "recollection is that no financial statements were produced after this date [December 31, 1994]."

  The evidence also presented includes a few general ledger and journal entry excerpts covering portions of 1996 and 1997. *See Mercury Exhs. J, M*.

  The accountant-prepared notes to the financial statement also include the undisputed dividends of December 31, 1991, which provided $38,000 to each 22% shareholder, and lesser amounts to those with smaller ownership rights. They detail the accrual of interest to each of the shareholders on their respective dividend amounts. As further discussed *infra*, Mr. Murray did not account for these amounts in performing his calculations of Vitiello's debt.

Mr. Trimble, a principal of South Liberty, was called by South Liberty as a witness and testified that he purchased one unit for $150,000, and a second unit for $185,000. There is apparently no dispute as to the details of the first loan. For the second unit he paid $150,000 up front and the remaining $35,000 debt was kept on the books, but according to Mr. Trimble, was ultimately paid via an offset of a profit obligation the corporation had toward him. *Tr. at 48*. He testified that one year, the corporation owed him $38,000 and that he owed them $35,000, and that "as interest and everything went on, at some point in time it seemed to just even out." *Id*. This would seem to comport with the $38,000 dividends running on the books for Mercury, Vitiello and Trimble since December 31, 1991.

Mr. Trimble also testified that Mr. Vitiello, another principal of South Liberty, purchased a unit, for which he did not pay in full, but for which he does not now owe, due to offsets based on approximately $138,000[2] and other lesser amounts that Mr. Vitiello loaned to the corporation. *Id. at 49*. According to Mr. Trimble, Mr. Vitiello "was paid interest on the $150,000 that he loaned the corporation at the same rate that the corporation was charging him [interest] for the $150,000 that he owed the corporation," constituting a "wash." *Id*. Mr. Trimble clarified further, that "at some point in time we needed additional monies, and he kept contributing the monies as we went along for taxes, stuff like that" and that interest was paid by Mr. Vitiello by

---

[2] There are differing representations as to the amount of Vitiello's largest loan to the corporation. The outside accountant's notes to the financial statement and Mr. Murray's testimony (*Tr. at 28*) refer to the amount as $148,626.74, while other references are to a figure of $138,626.74.

"an offset on the books." *Id. at 49-50.*

      Mr. Trimble testified:

Q: Now, Mr. Murray testified that there was interest that was indicated on financial statements. Are you familiar with those financial statements?

A: I saw the statements, yes, sir.

Q: Did that interest get paid by Mr. Vitiello, whether in cash or through an offset?

A: Yes.

Q: How was it paid?

A: Again, it was just an offset on the books.

Q: Now, did there come a time where there was discussion amongst the management of South Liberty and its accountant as to how to treat these offsetting obligations?

A: It's been many years, but to the best of my recollection, there came a point in time where the accountant that was doing our books said it's ridiculous to keep these two columns going, one owing and one coming in and mine became a wash, his became a wash. I guess that's why it wasn't footnoted anymore.

*Id. at 50.* He believed that the time of the accountant's resolution of the balances in this way was in 1994 or 1995. *Id. at 51.* Mr. Trimble testified that the $38,000 dividend due to Mr. Vitiello was a part of the setoff of mutual obligations, in addition to what he loaned the corporation and miscellaneous set-offs. *Id. at 61.* Mr. Trimble testified that the accountant Jennifer Sciscente was the individual who calculated the offset to reflect the interest from the period when South Liberty loaned Mr. Vitiello money and the time when he loaned money back to South Liberty, and considering additional monies contributed by Mr. Vitiello to keep the corporation afloat. *Id. at 53-54.* Mr. Murray's analysis reflects that the offset occurred later in 1998.

Mr. Trimble explained that while the obligations between the corporation and himself and between the corporation and Mr. Vitiello were no longer footnoted after 1994 or 1995, those between the corporation and Mr. Mercury were still footnoted "[b]ecause he never paid - - he sold his unit and walked away with $150,000 that was owed to the corporation." *Id. at 51*.

By post-hearing letter dated Nov. 7, 2006, Mr. Mercury argues that South Liberty claimed for the first time in the hearing that Mr. Vitiello was owed $38,000 based on a 1991 dividend, and that in so claiming, it ignored Mr. Trimble's testimony that all shareholders were treated equally, *Tr. at 63*. This argument is unavailing, as the balances due and owing between the corporation and the shareholders are the crux of this case and any dividend owed by the corporation to a shareholder necessarily factors into the consideration. Why Mr. Murray did not consider these figures when calculating his version of the net amounts owed is a mystery, particularly in light of the fact that Mr. Mercury himself received the benefit of a $38,000 offset, with interest accruing from December 31, 1991 to the date of the 1999 state court decision. *See South Liberty, Exh. A at* 14. Mr. Mercury cannot equitably reap the benefit of that interest accrual, outside of the reasonable context of its proper accrual to him as well as to the other shareholders, while loans to them from South Liberty also accrued interest. To conclude otherwise would defy the purpose of equitable relief.

On the financial statement notes that are included on the record (and reviewed by Mr. Murray) are entries for amounts due "from profits 12/31/91;" of $38,000 to Al Vitiello, Gary Mercury, Jim Trimble, and Barete Santourjian; of $8,637 to Leona Monahan, and Richard

Janpol; and of $1,727 to William Monahan and John Crapanzano. *See Exh. H.* The fact that all shareholders were treated alike with respect to the 1991 dividends is relevant to discerning a practice of treating shareholders equally and is relevant to determining whether amounts owed in both directions were or were not properly deemed to be a "wash."

The Court also notes that the journal entries for portions of 1996 include numerous "credits" listed as cash receipts from Vitiello and Jim Trimble, totaling approximately $14,565. *See Mercury Exh. J.* The general ledger for portions of 1997 also includes numerous entries listed as loan receivable-stock from Vitiello and Trimble (although significantly obstructed by superimposed handwritten notes referencing "monies [?]V advanced to co.," the entries reveal several thousands of dollars of credits going toward the company from Al Vitiello or from "AV Mortgage." The additional handwritten note reveals that "monies" were advanced to the corporation from someone with the last initial of "V."

Although the documentary evidence leaves something to be desired, the intention to both charge and receive interest is readily apparent, from both the outside accountant's calculations and from the testimony at trial, acknowledging and confirming that such decision was made. That this decision was not properly recorded, and imperfectly implemented after the decision was made does not change the existence of evidence tending to show that interest accruals were specifically intended and indeed calculated during what must have been an effort to effect better business practices in this corporation. The state court in 1999 found that Mr. Mercury admitted that at one point, he did owe $200,891.86, which would have included interest on the loan. *See*

*South Liberty Exh. A at 10.* Such an admission would not have been forthcoming had he disputed that interest was properly charged to all shareholders. The Court finds that interest accrual was the practice of the corporation, as the there is clear evidence that such was the corporation's *intent,* and there is no clear evidence to the contrary.

The Court could not possibly on the evidence presented, perform a line-by-line calculation of whether the interest accumulations precisely measure to the set-offs ultimately claimed by Vitiello and Trimble, but the preponderance of the evidence shows that interest accrued in both directions on the loans to and from South Liberty, and on the totality of the evidence and circumstances, the Court concludes that the interest obligations on the $150,000 debt owed by Mr. Vitiello to South Liberty from 1989 to 1995, were not in fact, forgiven, but were ultimately, offset by the principal and interest owed to Mr. Vitiello on the $138,626.74 loan he made to South Liberty, plus the $38,000 dividend from December 31, 1991 owed to Mr. Vitiello, which would have accrued interest, as well as the numerous additional payments he made to the corporation, as revealed in the journal entries and general ledger. *See Exhs. J, M.* During a brief examination on the witness stand, Mr. Vitiello testified that he never received any money for acting as project manager. *Id. at 55.* The possibility that Mr. Vitiello rendered construction management services and was not reimbursed for them, despite the journal entry for $25,000 further supports a finding that interest accrued in both directions and was ultimately effectively offset by amounts owing to Vitiello.

The additional means of unequal treatment alleged by Mr. Mercury are arguably outside

the scope of the mandate, which specifically referenced whether Mr. Mercury might prevail on proving disparate interest practices, and in any case, have been considered and are denied for want of merit. The $10,000 overpayment alleged by the Mercury's to have been made to MCM contractors for paving and grading, is alleged with no motive for overpayment, is presented in the context of "a mess" of invoices that were "very hard to follow" and in disarray, according to the Mercury's witness, Mr. Murray. *See Tr. at 40.* On this meager testimony, which included an admission that one of more invoices may have been lost in the disarray, there is no basis for finding an overpayment. In any case, even were an overpayment made by South Liberty, it would have affected all shareholders alike. Indeed, Mr. Murray admitted that all shareholders were treated similarly as to any such overpayment. *Id.* MCM is not shown to have been a corporate insider. If indeed it was overpaid, this is no more than mismanagement, not unequal treatment.

Similarly, if Al Vitiello were paid or credited $25,000 for services never actually rendered, he as a shareholder would certainly benefit, but Mr. Mercury would not be singled out in effect. All other shareholders would be likewise adversely affected by such an excessive credit or payment, which, is, in any event, not proved. Finally, the $38,000 "discount" on Al's son's unit, also did not singularly affect Mr. Mercury. Even if such a discount was not for a legitimate purpose to which the shareholders orally agreed, as was their custom, then any unjustified discount would have adversely affected all shareholders, not just Mr. Mercury.

*Mary Mercury's Joint and Several Liability*

This Court earlier found Mary Mercury to be jointly and severally liable for Gary Mercury's debt to South Liberty. On remand, the Court of Appeals directed this Court to provide "an explanation and, if appropriate, a reconsideration of Mary Mercury's liability in light of the vacatur of the judgment against her." *Mandate at 4*.

During proceedings held in this Court on November 29, 2004, Mrs. Mary Mercury testified:

> Q: At the time you signed the purchase agreement, who was the president of South Liberty?
>
> A: My husband was.

Mrs. Mercury co-signed the purchase agreement for the condominium unit, rendering her jointly and severally liable for the debt to South Liberty. She shall not, however, be liable to any extent greater than Mr. Mercury. *See Tr. at 5*.

Contrary to any suggestion to the contrary in the hearing on remand or otherwise, Mrs. Mercury's previous tort claims are not issues in this case, as they were dismissed by decision of this Court dated December 1. 2004, and by Final Judgment of this Court dated December 13, 2004. That judgment was affirmed by the Court of Appeals in all respects, save for the issues of unequal treatment and joint and several liability, which have been adjudicated in this decision on remand. *See supra.*

The Clerk shall enter an appropriate Judgment, which shall be referred to the Bankruptcy

Court to be allowed as a joint and several claim in both estates.

X

       X

            X

               X

SO ORDERED.

Dated: White Plains, New York
       February 22, 2007

SO ORDERED.

Dated: White Plains, New York
       February 22, 2007

                                            Charles L. Brieant, U.S.D.J.